[Civ. No. 7921. Second Appellate District, Division One.—June 6, 1934.]

F. C. RHOADES, Respondent, v. A. R. TOWNSEND et al., Appellants.

Rohe, Dottenheim & Weikert, Richard Coblentz, Rohe & Weikert and Alfred C. Bowman for Appellants.

G. C. De Garmo and W. M. Crane for Respondent.

HAHN, J., *pro tem.*—This appeal comes to us from a money judgment rendered against each of the defendants in an action to enforce a stockholders' liability for an alleged indebtedness owing by the Metals Refining Company,

a corporation, in which defendants were stockholders at the time the indebtedness was incurred.

The points involved in the appeal, as stated by appellants in their brief, are as follows: "1. There can be no stockholders' liability in a corporation having a dual stock structure. 2. Stock of a Maine corporation, issued in Maine, and transferred in California, without a permit from the commissioner of corporations, is void, and no liability can be founded upon such stock. 3. Judgment cannot be entered upon a complaint for stockholders' liability when the complaint contains no allegation of the number of shares issued to the defendants, or either of them, or of the proportion which the shares, alleged to be owned by them, bears to the whole of the capital stock outstanding at the time the debt, sued for, was incurred."

The following findings of fact are pertinent to a consideration of the points raised:

The Metals Refining Company was a corporation, organized under the laws of the state of Maine, and duly authorized to transact business in the state of California. The authorized capital provided for 10,000 shares of preferred stock of the par value of $100 per share, and 1,000,000 shares of common stock at the par value of one cent per share. During the period when the debt was incurred by the corporation there was subscribed, issued and outstanding all of the common stock and 1416 shares of the preferred stock. Defendant Townsend was the owner of 336⅙ shares of preferred stock and 268,000 shares of common stock, and defendant Forderer owned 239⅔ shares of preferred and 115,750 of common stock.

All of the stock owned by defendants was originally issued by the corporation in the state of Maine to other parties who subsequently transferred this stock to defendants. The stock then was reissued to defendants at the office of the corporation in California. No permit was ever obtained by the Metals Refining Company from the commissioner of corporations in California, authorizing said corporation to reissue this stock to defendants.

■ Appellants' first point involves the question as to whether or not the provisions of the Constitution and statutes of California relating to stockholders' liability, as they existed prior to the changes that became effective in 1930

and 1931, were applicable to foreign corporations authorized to do business in this state, whose stock structure provided for different par values for the stock authorized.

In urging a negative answer to this question, appellants contend that the stockholders' liability laws of California were fashioned on the basis of all corporations having stock of the same par value. That because no method is provided by our laws whereby the stock liability may be equitably distributed upon stocks of different par value, the liability provisions of our Constitution and statutes must be held to be ineffective as to foreign corporations with a dual stock structure. In support of this contention, appellants cite the case of *Film Producers, Inc.,* v. *Jordan,* 171 Cal. 664 [154 Pac. 605], and also *Del Monte L. & P. Co.* v. *Jordan,* 196 Cal. 488 [238 Pac. 710].

In the Film Producers, Inc., case petitioner sought a writ of mandate to compel the respondent as Secretary of State to file petitioner's original articles of incorporation which provided for preferred and common stock issues, each issue to have a different par value. In the Del Monte case petitioner desired to file amended articles of incorporation, providing for preferred stock, of $100 par value per share, and common stock of no par value.

In the Film Producers, Inc., case the court in denying the writ of mandate predicated its conclusion on the basic premise, that "our statutes were framed, and our decisions under them based, upon a capitalization represented by shares of a single par value".

In 1923, subsequent to the decision in the Film Producers, Inc., case, the legislature added to the Civil Code, sections 290b, 290c, 290d, 290e and 290f, whereby for the first time provision was made for the organization of corporations under the California laws with both par value and nonpar value stock. Petitioner in the Del Monte L. & P. Co. case, *supra,* in order to avoid the effect of the Film Producers decision, contended that the amendments to the Civil Code operated to modify or repeal sections 307 and 322 of the Civil Code, which the author of that opinion cited as a basis for the conclusion arrived at in that case. The court, however, denied the writ on the ground that notwithstanding the new sections added to the Civil Code, the same difficulties pointed out in the *Film Producers, Inc.,* v. *Jordan,* case,

*supra,* affecting the voting of the stock and also the stock liability still existed, because of the provisions of sections 3 and 12 of article XII of the Constitution of California, which sections were in nowise affected by the legislative enactment of the new sections to the Civil Code. In closing the discussion of the considerations which determined its conclusion refusing the writ prayed for, the court declares: "We only conclude in this decision that it was the intent of the framers of our state Constitution in inserting the provisions thereinabove referred to touching the relative voting influence and proportional liability of the stockholders of corporations, to require that corporations organized thereunder should have their capitalization represented in shares of a single par value, and that such must be required of those seeking to organize corporations or to amend the articles of corporations already organized in this state so long as the aforesaid provisions of our state Constitution remain unchanged."

In the case of *Land Development Co.* v. *Jordan,* 198 Cal. 346 [245 Pac. 187], the sole question determined was the right of petitioner to file its articles of incorporation where the authorized stock was all nonpar value. The respondent contended that under the decisions in *Film Producers, Inc.,* v. *Jordan, supra,* and *Del Monte L. & P. Co.* v. *Jordan, supra,* the refusal of respondent to file the articles of incorporation in question was justified. The court in granting the writ of mandate compelling respondent as Secretary of State to accept and file the proposed articles of incorporation, held that there was nothing in the statutes or state Constitution that militated against a corporation having all nonpar stock. This, for the reason that there was an equality of interest in each stockholder, in that his right to vote his stock was maintained as provided in section 12, article XII, of the Constitution, while nothing in the stock structure conflicted with the application of the provisions of section 3, article XII, of the Constitution, relating to stock liability.

It will be noted that the foregoing cases all involved domestic corporations.

In the case of *Commonwealth Acceptance Corp.* v. *Jordan,* 198 Cal. 618 [246 Pac. 796, 801], petitioner was a corporation organized under the laws of Delaware. Its articles of

incorporation provided for preferred stock at the par value of $10 per share, class A common stock at the par value of $10 per share and class B stock without nominal or par value. Respondent, as Secretary of State, defended his refusal to file the certified copy of petitioner's articles of incorporation on the grounds which formed the basis of the decisions in *Film Producers, Inc.,* v. *Jordan, supra,* and *Del Monte L. & P. Co.* v. *Jordan, supra.* The court in granting the writ requiring the respondent as Secretary of State to accept and file petitioner's certified articles of incorporation, determined that the consideration which justified the refusal to permit the filing of the articles of incorporation in the Film Producers, Inc., and Del Monte L. & P. Co. cases, did not apply where a foreign organized corporation desired to file a certified copy of its articles of incorporation for the purpose of doing business in this state. And this because of the doctrine of comity between states as provided by the Constitution of the United States and the decisions of the United States Supreme Court in the interpretation thereof.

Referring to the considerations which were persuasive in determining the conclusions arrived at in the Film Producers, Inc., and Del Monte L. & P. Co. cases, the court in *Commonwealth Acceptance Corp.* v. *Jordan, supra,* made the following observation: "The respondent herein contends that a foreign corporation organized for the foregoing purposes may not, under the foregoing inhibition of the Constitution, be permitted to enter the state of California and transact business herein, for two reasons: First, that because of its dual stock structure its stockholders have not an equality of voting power; and, second, that for the same cause its stockholders are not subject to an equality of liability. As to the first of these reasons, it would seem that the matter of the equality or inequality of voting power in its stockholders is one which concerns merely the internal organism of the corporation and has nothing whatever to do with the transaction of the business of the corporation as between itself and the outside world; and that this being so, the language of the court in the case of *Miles* v. *Woodward,* [115 Cal. 308 (46 Pac. 1076)], *supra,* with this section of the Constitution immediately in mind, may be aptly applied, 'The Constitution was not designed to limit the powers of the legislature when dealing with the organiza-

tion and government of corporations which are created by its own will and act; over such corporations it has and may exercise full powers of control. Over the organization and internal government of foreign corporations it has no such power. The laws of the state do not have extra-territorial force. It would be meaningless of this state to try to legislate upon the internal affairs of such foreign corporations, and it has not attempted to do so.' Applying these principles we are of the opinion that the question as to whether the stockholders of this foreign corporation have or have not an equality of voting power in the management of its internal affairs is not involved in the present inquiry.''

As to the second contention of respondent, that if petitioner were allowed to do business in California with its dual stock structure, its stockholders would have an advantage over the stockholders of domestic corporations in the matter of stock liability, the court disposes of this point with the declaration that stockholders of foreign corporations are subject to the same liabilities as stockholders of domestic corporations, citing cases which have established this rule in California. While the court did not see fit to go a step further and point out the rule or method of fixing or computing this liability in the case of foreign corporations with a dual stock structure, the opinion clearly is authority for the proposition that stockholders in such corporation have a stock liability in California.

The difference in the par value of each class of stock raises the question as to whether the liability shall be computed on a share basis, so that both the common and preferred stock will be liable for the same amount per share, or upon a monetary basis whereby the liability is divided against the stock in proportion to the nominal par value of its shares.

The trial court adopted the latter method of computation. To this basis of fixing their liability, appellants make no criticism other than their general objection to any liability whatsoever.

Section 3, article XII, of our state Constitution in effect prior to November, 1930, provided for liability in the following language: ''Each stockholder of a corporation, or joint-stock association, shall be individually and personally

liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock, or shares of the corporation or association. . . . ''

In the case of *Land Development Co.* v. *Jordan, supra,* the court in interpreting the above-quoted language of the Constitution said: ''In our view the terms of the section do not require that the individual liability of stockholders to creditors of the corporation be ascertained and computed solely on a monetary basis. It may be computed on either a monetary basis or share basis. . . . It would seem . . . that *both a monetary and a numerical or 'share basis'* method of computation of stockholder's liability are authorized.''

Accepting the premise that stockholders of foreign corporations doing business in California have a liability for the debts of the corporation, and that as to such stockholders the equality of liability should determine the rule or measure to be used in apportioning the liability as between the several classes of stock of different par values, it would seem that the method of fixing the liability on what has been described by authority as a monetary basis instead of a share basis would meet the requirements of our laws. The theory that from the outset underlay our stock liability laws was that the burden assumed by the stockholder was in proportion to his money investment as computed on a par basis. So long as there was but one par value stock, it so happened that the relative financial interest of the stockholders when based on the par value maintained the same constant ratio with their share interest. With a dual stock structure of different par value, this ratio between shares and monetary interest no longer remains constant. This fact does not, however, prevent maintaining a constant ratio between corporation liabilities and the stock when figured on the basis of par money value.

Moreover, adoption of the monetary basis of computation would do no violence to a reasonable interpretation of the phrase ''amount of stock'' as used in the Constitution, for the word ''amount'' is quite as commonly used to denote a sum of dollars as it is a numerical total of things.

We therefore conclude that the trial court did not commit error in the method adopted in fixing the amount for which each defendant was liable.

■ Appellants' second point, that the stock held by them was illegally issued and therefore void, because the Metals Refining Company had never secured a permit from the corporation commissioner of California authorizing it to issue any stock, is without merit.

The stock was transferred to appellants by third parties to whom it was issued in Maine. The act of the corporation in California was simply that of reissuing new certificates for those previously issued by the corporation. As this appeal is on the judgment-roll alone, we must assume that the stock was lawfully in the hands of those who transferred to appellants. Under such circumstances no permit was required for the reissue of the stock in California. (Sec. 2, subd. c, Corporate Securities Act (1928); *People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089]; *Pollak* v. *Staunton,* 210 Cal. 656 [293 Pac. 26].)

■ Appellants next urge that the judgment cannot be sustained on a complaint which "contains no allegation of the number of shares issued to the defendants". While it is true that the amended complaint does not contain any allegation setting forth the specific number of shares issued to, or subscribed for by the defendants, it does allege "that during all of the times mentioned in this complaint each of said defendants was the owner and holder on the books of said Metals Refining Company of certain of the common and preferred stock of said corporation, the exact amount of which is unknown to this plaintiff and said plaintiff will ask leave to amend his complaint setting forth the exact amount of stock owned by each of said defendants when the same becomes known".

The findings of fact find the number of shares of preferred and common stock owned by each of the defendants. We must conclude that the evidence supports this finding.

While it may be conceded that plaintiff erred in failing to move before the trial court for permission to amend his complaint to conform to the proof, such oversight under the circumstances would not justify a reversal of the judgment. (Sec. 4½, art. VI, of the California Constitution.)

In his reply brief appellant for the first time raises the point that "the alleged stockholders' liability of appellants was inchoate until reduced to judgment and was destroyed by the repeal of section 3, article XII, of the Constitution of California on November 4, 1930". The case of *Coombs* v. *Getz*, 285 U. S. 434 [52 Sup. Ct. 435, 76 L. Ed. 866], disposes of this question adversely to appellants' contention.

For the reasons indicated the judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.